

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMOOTHIE KING FRANCHISES, INC., | CIVIL ACTION |
| Plaintiff, | NUMBER **02-0156** |
| v. | JUDGE |
| VIVA LA SMOOTHIE, INC., DAN GRANADER, SHERRY GRANADER, and VINCE ALONZI, | SECTION **SECT. J MAG. 1** |
| Defendants. | MAG. DIV. |

## COMPLAINT

Plaintiff Smoothie King Franchises, Inc., by its attorneys, and for its Complaint against defendants Viva La Smoothie, Inc., Dan Granader, Sherry Granader, and Vince Alonzi (collectively "Defendants"), states as follows:

### PARTIES

1.  Plaintiff Smoothie King Franchises, Inc. ("SKFI") is a Louisiana corporation with its principal place of business in Kenner, Louisiana. SKFI is engaged in the business of operating, and granting franchises to qualified persons to operate, distinctive Smoothie King franchises which offer smoothies, other nutritional drinks and sports drinks and nutritional

1



products under SKFI's proprietary names, marks and logos (the "SKFI Marks") and in accordance with SKFI's unique business format and system of operation (the "SKFI System").

2. Defendant Viva La Smoothie, Inc. ("Viva La Smoothie") is, on information and belief, a Nevada corporation with its principal place of business in Las Vegas, Nevada. Viva La Smoothie is a franchisee and area developer of SKFI.

3. Defendant Dan Granader is, on information and belief, a citizen and resident of the State of Texas.

4. Defendant Sherry Granader is, on information and belief, a citizen and resident of the State of Texas. (Dan and Sherry Granader are referred to collectively herein as "the Granaders").

5. Defendant Vince Alonzi is, on information and belief, a citizen and resident of the State of Nevada.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Furthermore, the Area Development Agreement and each of the written Franchise Agreements entered into by and between the parties specifically provide that "any action brought by either party against the other in any court, whether federal or state, shall be brought within Louisiana in the judicial district in which [SKFI] has its principal place of business and do

hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision."

## BACKGROUND FACTS

### The Parties' Franchise and Area Development Agreements

8.      On or about October 17, 1997, SKFI, as franchisor, and Sherry and Dan Granader, as developers, entered into a Smoothie King Franchises, Inc. Area Development Agreement (the "Texas ADA") pursuant to which SKFI granted the Granaders the right, subject to the terms and conditions of the ADA, to establish and operate multiple Smoothie King franchise businesses in the areas of Texas specified in the Texas ADA (the "Texas Option Area"). The Granaders were required, under Section 4.2 of the Texas ADA, to establish and operate Smoothie King franchises in the Texas Option Area in accordance with the Texas ADA's Development Schedule.

9.      The Granaders did not comply with the Development Schedule set forth in the Texas ADA.

10.     Rather, and notwithstanding the development obligations set forth in the Texas ADA, the Granaders advised SKFI that they desired, in lieu of pursuing development opportunities in the Texas Option Area, to focus on the development of Smoothie King franchises in Las Vegas, Nevada.   11.   Accordingly, the Texas ADA was terminated by mutual consent of the parties.

12.     Consistent with the Granaders' professed desire to develop Smoothie King franchises in the Las Vegas, Nevada market, SKFI, as franchisor, and Sherry and Dan Granader, as developers, entered into another Smoothie King Franchises, Inc. Area Development Agreement (the "Las Vegas ADA"). Pursuant to the Las Vegas ADA, which was entered into

and amended on or about August 7, 1998, SKFI granted the Granaders, subject to the terms and conditions of the Las Vegas ADA, the exclusive right to establish and operate multiple Smoothie King franchise businesses in a specified portion of Las Vegas, Nevada (the "Option Area"). Pursuant to Section 1.3 of the Las Vegas ADA, each such franchise was to be subject to a separate SKFI franchise agreement.

13. The Granaders were required, under Section 4.2 of the Las Vegas ADA, to establish and operate Smoothie King franchises in the Option Area in accordance with the Las Vegas ADA's Development Schedule, as follows:

| Total Number of Units Open and In Operation In the Option Area | By (Date) |
|---|---|
| 1 | January 1, 1999 |
| 2 | July 1, 1999 |
| 3 | December 1, 1999 |
| 4 | May 1, 2000 |
| 5 | September 1, 2000 |
| 6 | December 1, 2000 |
| 7 | April 1, 2001 |
| 8 | August 1, 2001 |
| 9 | November 1, 2001 |

14. It is an event of default, and grounds for immediate termination of the Las Vegas ADA, if, after being 60 days' notice and an opportunity to cure, the Granaders failed to have open and in operation in the Option Area the number of Smoothie King franchises required under the Development Schedule.

15. On or about July 16, 1999, SKFI and Viva La Smoothie entered into a Second Amendment to Development Agreement modifying the Option Area under the Las Vegas ADA.

16. Contemporaneous with the execution of the Las Vegas ADA, on or about August 7, 1998, SKFI, as franchisor, and Sherry and Dan Granader, as franchisees, entered into a written Smoothie King Franchises, Inc. Franchise Agreement (the "Maryland Parkway Franchise Agreement") pursuant to which SKFI granted the Granaders a franchise to operate a Smoothie King franchise in the Option Area as set forth in the Las Vegas ADA, and to use the SKFI Marks and the SKFI System in connection therewith. This franchise was subsequently established at 4440 South Maryland Parkway, in Las Vegas, Nevada (the "Maryland Parkway Franchise").

17. On or about March 29, 1999, SKFI and Dan and Sherry Granader entered into a written Transfer of Franchise Agreement Area Development Agreement (the "Transfer Agreement") pursuant to which the Granaders transferred, assigned and conveyed all of their right, title and interest in and to the ADA, the Maryland Parkway Franchise Agreement and any agreements related thereto to Viva La Smoothie. Contemporaneously therewith, the Granaders executed a Guaranty guaranteeing to SKFI, jointly and severally, (i) the payment and satisfaction of each and every claim, demand, default, liability, indebtedness, right or cause of action of ever nature whatsoever, against Viva La Smoothie, including expenses, damages and fees, and (ii) the timely performance of each term, covenant and obligation of Viva La Smoothie under the Maryland Parkway Franchise Agreement and the Las Vegas ADA.

18. On or about July 5, 1999, SKFI, as franchisor, and Viva La Smoothie, as franchisee, entered into a written Smoothie King Franchises, Inc. Franchise Agreement (the "Henderson Franchise Agreement") pursuant to which SKFI granted Viva La Smoothie a franchise to operate an additional Smoothie King franchise in the Option Area as set forth in the Las Vegas ADA, and to use the SKFI Marks and the SKFI System in connection therewith. This franchise was subsequently established in Henderson, Nevada (the "Henderson Franchise").

19. Contemporaneously therewith, Dan and Sherry Granader executed a Guaranty Agreement personally guaranteeing to SKFI, jointly and severally, (i) the payment and satisfaction of each and every claim, demand, default, liability, indebtedness, right or cause of action of every nature whatsoever, against Viva La Smoothie, including expenses, damages and fees, and (ii) the full and prompt payment and performance of each of Viva La Smoothie's obligations under the Henderson Franchise Agreement.

20. On or about August 30, 2000, SKFI, as franchisor, and Viva La Smoothie, as franchisee, entered into a written Smoothie King Franchises, Inc. Franchise Agreement (the "Circus Circus Franchise Agreement") pursuant to which SKFI granted Viva La Smoothie a franchise to operate a Smoothie King franchise at Circus Circus Hotel and Casino, in Las Vegas, Nevada, and to use the SKFI Marks and the SKFI System in connection therewith (the "Circus Circus Franchise").

21. Contemporaneously therewith, Vince Alonzi and Dan Granader executed a Guaranty Agreement personally guaranteeing to SKFI, jointly and severally, (i) the payment and satisfaction of each and every claim, demand, default, liability, indebtedness, right or cause of action of ever nature whatsoever, against Viva La Smoothie, including expenses, damages and fees, and (ii) the full and prompt payment and performance of each of Viva La Smoothie's obligations under the Circus Circus Franchise Agreement.

22. Also on or about August 30, 2000, SKFI, as franchisor, and Viva La Smoothie, as franchisee, entered into a written Smoothie King Franchises, Inc. Franchise Agreement (the "Universal City Franchise Agreement") pursuant to which SKFI granted Viva La Smoothie a franchise to operate a Smoothie King franchise in Universal City, California, and to use the SKFI Marks and the SKFI System in connection therewith (the "Universal City Franchise").

23.    Contemporaneously therewith, Vince Alonzi and Dan Granader executed a Guaranty Agreement personally guaranteeing to SKFI, jointly and severally, (i) the payment and satisfaction of each and every claim, demand, default, liability, indebtedness, right or cause of action of ever nature whatsoever, against Viva La Smoothie, including expenses, damages and fees, and (ii) the full and prompt payment and performance of each of Viva La Smoothie's obligations under the Universal City Franchise Agreement.

24.    Further, while they have not executed a Franchise Agreement for the location, Defendants have commenced construction of an additional Smoothie King franchise at Maryland and Sahara in Las Vegas, Nevada (the "Maryland/Sahara Franchise").

25.    Additionally, and while not yet memorialized by an executed Franchise Agreement, Defendants began operating, in or around February, 2000, a Smoothie King franchise at Sky Harbor airport in Phoenix, Arizona (the "Sky Harbor Franchise").

26.    Defendants agreed, under Section 3.5 of each of the Franchise Agreements, and under Section 1.3 of the Las Vegas ADA, to pay to SKFI, on a weekly basis commencing on the date each franchise opened and continuing throughout the term of each Franchise Agreement, an operating fee equal to five percent (5%) of the weekly gross sales of each franchise.

27.    Defendants also agreed, under Section 3.6 of each of the Franchise Agreements, to pay to SKFI, again on a weekly basis commencing on the date each franchise opened and continuing throughout the term of each Franchise Agreement, an advertising fee equal to two percent (2%) of the weekly gross sales of each franchise.

28.    Under Section 14.3 of each of the Franchise Agreements, it is an event of default, and grounds for termination of the Franchise Agreements if, after being given a 10 day opportunity to cure, the franchisee fails, refuses or neglects to pay any amounts due SKFI.

29.     Each Franchise Agreement provides that its term commences on the date of execution by SKFI and expires 10 years from the date the franchise opens for business.

**Defendants' Breach Of The Franchise Agreements and the Las Vegas ADA**

30.     Commencing with the week beginning April 30, 2001 and continuing to date, Defendants failed and refused to pay to SKFI the operating fees or advertising fees for the Maryland Parkway Franchise, the Henderson Franchise, the Universal City Franchise and the Circus Circus Franchise.

31.     Commencing with the week beginning February 12, 2001 and continuing to date, Defendants failed and refused to pay to SKFI the operating fees or advertising fees for the Sky Harbor Franchise.

32.     In addition to failing to pay operating fees and advertising fees, Defendants have failed and refused to pay to SKFI certain franchise fees. Specifically, Defendants have failed and refused to pay to SKFI the $47,000.00 franchise fee for the Universal City Franchise and the $15,000.00 franchise fee for the Maryland/Sahara Franchise.

33.     Additionally, Defendants have failed and refused to pay to SKFI the $50,000.00 franchise fee for the Sky Harbor Franchise.

34.     Finally, in breach of the Las Vegas ADA, Defendants failed to have open and operating by August 1, 2001 eight (8) Smoothie King franchises as required by the Las Vegas ADA. In fact, as of August 1, 2001, Defendants had only opened three (3) Smoothie King franchises in the Option Area.

35.     By letter dated July 9, 2001, SKFI advised Defendants that they were in default of the Las Vegas ADA for failing to comply with the development schedule.

36. By letters dated July 9, 2001, SKFI advised Defendants that they were in default of the Circus Circus Franchise Agreement, the Maryland Parkway Franchise Agreement, and the Henderson Franchise Agreement. The July 9 letters demanded that Defendants cure their defaults within 10 days.

37. By letters dated July 12, 2001, SKFI advised Defendants that they were in default of the Universal City Franchise Agreement and their obligations in connection with the operation of the Sky Harbor Franchise for failure to pay operating fees and advertising fees. The July 12 letters demanded that Defendants cure their defaults within 10 days.

38. By letter dated July 18, 2001, SKFI agreed to extend to August 1, 2001 the date by which Defendants were required to cure their monetary defaults.

39. To date, Defendants have not cured the defaults set forth in any of the Notices of Default.

### The Abandonment Of The Circus Circus, Sky Harbor and Maryland Parkway Franchises And Other Wrongful Conduct

40. In or around September 30, 2001, Defendants, without cause, and with approximately 9 years remaining on the term of the Franchise Agreement, wrongfully abandoned the Circus Circus Franchise, closing that franchise.

41. In or around January, 2002, Defendants, without cause, wrongfully abandoned the Sky Harbor and Maryland Parkway Franchises, closing those franchises.

42. The Franchise Agreements provide that "in the event Franchisor or Franchisee retains legal counsel to enforce any provision of this Agreement, including obtaining injunctive or other relief, or to collect any payments due hereunder, the prevailing party in any proceeding shall be entitled to recover its damages, costs and expenses, including reasonable legal and

accounting fees, at the trial level and on appeal, incurred as a result of the default or pursuing its remedies at law or under this Agreement."

43.  SKFI has fully performed all of its obligations under the Franchise Agreements and the Las Vegas ADA.

## COUNT I

### BREACH OF FRANCHISE AGREEMENT
### (as to Defendants Viva La Smoothie, Dan Granader and Vince Alonzi)

44.  SKFI realleges and incorporates by reference ¶¶ 1 through 43 of its Complaint inclusive, as and for this ¶ 44, as if fully set forth herein.

45.  Defendants have materially breached the Circus Circus Franchise Agreement by, among other things, failing and refusing to pay operating fees and advertising fees to SKFI.

46.  Defendants have materially breached the Universal City Franchise Agreement by, among other things: (i) failing and refusing to pay operating fees and advertising fees to SKFI; and (ii) failing and refusing to pay to SKFI the $47,000.00 franchise fee for that franchise.

47.  Additionally, Defendants were obligated to operate the Circus Circus Franchise for the full ten (10) year term of the Franchise Agreement.

48.  Defendants' wrongful and unilateral abandonment of the Circus Circus Franchise Agreement and their failure to operate the Circus Circus Franchise for the full term of the Franchise Agreement constitute material breaches of that agreement.

49.  As a direct and proximate result of Defendants' breaches of the Circus Circus Franchise Agreement, SKFI has suffered damages in an amount in excess of $75,000.00, including loss of goodwill and damage to reputation and the loss of the operating fees and advertising fees SKFI would have earned for the remainder of the term of the Circus Circus Franchise Agreement but for Defendants' breach thereof.

## COUNT II

### BREACH OF FRANCHISE AGREEMENT
### (as to Defendants Viva La Smoothie, Dan Granader and Sherry Granader)

50. SKFI realleges and incorporates by reference ¶¶ 1 through 43 of its Complaint inclusive, as and for this ¶ 50, as if fully set forth herein.

51. Defendants have materially breached the Maryland Parkway Franchise Agreement and the Henderson Franchise Agreement by, among other things, failing and refusing to pay operating fees and advertising fees to SKFI.

52. Additionally, Defendants were obligated to operate the Maryland Parkway Franchise for the full ten (10) year term of the Maryland Parkway Franchise Agreement.

53. Defendants' wrongful abandonment of the Maryland Parkway Franchise and their failure to operate that franchise for the full term of the Maryland Parkway Franchise Agreement constitutes material breaches of that agreement.

54. Further, Defendants have materially breached the Las Vegas ADA by, among other things, failing to open and operate the number of Smoothie King franchises set forth in the Development Schedule.

55. As a direct and proximate result of Defendants' breaches of the Maryland Parkway Franchise Agreement, the Henderson Franchise Agreement and the Las Vegas ADA, SKFI has suffered damages in an amount in excess of $75,000.00, including loss of goodwill and damage to reputation, loss of the operating fees and advertising fees SKFI would have earned had Defendants opened and operated Smoothie King franchises in compliance with the terms of the Development Schedule, and loss of the operating fees and advertising fees SKFI would have earned for the remainder of the term of the Maryland Parkway Franchise Agreement but for Defendants' breaches thereof.

## COUNT III

### BREACH OF FRANCHISE AGREEMENT / BREACH OF CONTRACT
### (as to All Defendants)

56.     SKFI realleges and incorporates by reference ¶¶ 1 through 43 of its Complaint inclusive, as and for this ¶ 56, as if fully set forth herein.

57.     Defendants have breached their contractual obligations to SKFI by, among other things: (i) failing and refusing to pay to SKFI the $15,000.00 franchise fee for the Maryland/Sahara franchise; and (ii) failing and refusing to pay to SKFI the $50,000.00 franchise fee due for the Sky Harbor franchise.

58.     Additionally, Defendants were obligated to operate the Sky Harbor Franchise for the full ten (10) year term of the parties' agreement.

59.     Defendants' wrongful abandonment of the Sky Harbor Franchise and their failure to operate that franchise for the full term of the parties' agreement constitutes material breaches of that agreement.

60.     Further, Defendants have failed and refused to compensate SKFI for architectural plans for the Sky Harbor Franchise which Defendants ordered and received.

61.     As a direct and proximate result of Defendants' breaches, SKFI has suffered damages, including loss of goodwill and damage to reputation, in an amount to be proved at trial.

## COUNT IV

### BREACH OF FRANCHISE AGREEMENT
### (as to Sherry Granader and Dan Granader)

62.     SKFI realleges and incorporates by reference ¶¶ 1 through 43 of its Complaint inclusive, as and for this ¶ 62, as if fully set forth herein.

63. On or about October 17, 1997, SKFI, as franchisor, and Sherry and Dan Granader, as franchisees, entered into a written Smoothie King Franchises, Inc. Franchise Agreement (the "Webster Franchise Agreement") pursuant to which SKFI granted the Granaders a franchise to operate a Smoothie King franchise in the Option Area as set forth in the Texas ADA, and to use the SKFI Marks and the SKFI System in connection therewith. This franchise was subsequently established in Webster, Texas (the "Webster Franchise").

64. Defendants agreed, under Section 3.5 of each of the Webster Franchise Agreement, to pay to SKFI, on a weekly basis commencing on the date the franchise opened and continuing throughout the term of the Franchise Agreement, an operating fee equal to five percent (5%) of the weekly gross sales of the franchise. Defendants also agreed, under Section 3.6 of the Webster Franchise Agreements, to pay to SKFI, again on a weekly basis commencing on the date the franchise opened and continuing throughout the term of the Franchise Agreement, an advertising fee equal to two percent (2%) of the weekly gross sales of the franchise.

65. Defendants have materially breached the Webster Franchise Agreement by, among other things, failing and refusing to pay operating fees and advertising fees to SKFI.

66. By letter dated July 9, 2001, SKFI advised Defendants that they were in default of their obligations under the Webster Franchise Agreement for failing to pay operating fees and advertising fees.

67. Defendants failed to cure the defaults.

68. SKFI has fully performed its obligations under the Webster Franchise Agreement.

69. The Webster Franchise Agreement provides that "in the event Franchisor or Franchisee retains legal counsel to enforce any provision of this Agreement, including obtaining

injunctive or other relief, or to collect any payments due hereunder, the prevailing party in any proceeding shall be entitled to recover its damages, costs and expenses, including reasonable legal and accounting fees . . . incurred as a result of the default or pursuing its remedies at law or under this Agreement."

70.　As a direct and proximate result of Defendants' breaches, SKFI has suffered damages in an amount to be proved at trial.

**WHEREFORE**, SKFI respectfully prays for the following relief:

a.　Damages in an amount to be proved at trial;

b.　An award of reasonable attorneys' fees, expenses and costs incurred by SKFI in this action; and

c.　Such other relief as the Court deems equitable and just.

Dated: January 17, 2002

Respectfully submitted,

BALDWIN & HASPEL

_____
Monica T. Surprenant (Bar No. 12583)
1100 Poydras Street
Suite 2200, Energy Centre
New Orleans, LA 70163-2206
Telephone: (504) 585-7711
Facsimile: (504) 585-7751
Attorneys for Plaintiff,
Smoothie King Franchises, Inc.